IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES JEMISON, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:08cv714-WHA |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

James Jemison, Jr. ("Jemison") asks the court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. After considering Jemison's § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

**I.   BACKGROUND**

*A.   Plea Agreement and Hearing*

On February 22, 2007, a federal grand jury returned a four-count indictment charging Jemison with possession with the intent to distribute crack cocaine, powder cocaine, and marijuana, in violation of 21 U.S.C. § 841(a)(1) (Counts 1 through 3), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4). Jemison later entered into a plea agreement with the United States, and on July 27, 2007, he appeared before the undersigned magistrate judge and pled guilty to Counts 1

and 4 of the indictment.

As consideration for the guilty plea and pursuant to a written plea agreement, the government agreed, in pertinent part, to the following:

- to dismiss Counts 2 and 3 of the indictment;

- to recommend that Jemison receive a two-level reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) should the government, in its sole discretion, find that Jemison did not obstruct justice "or otherwise fail to accept responsibility for the offense conduct"; and

- to recommend a further reduction of one level pursuant to U.S.S.G. § 3E1.1(b) should the government, in its sole discretion, find that Jemison assisted authorities in investigating and prosecuting his misconduct by timely notifying authorities of his intention to plead guilty.

*See Plea Agreement* (Gov. Exh. B) at pp. 3-4.

Jemison, for his part, committed to the following under the plea agreement:

- to plead guilty to the Counts 1 and 4;

- not to commit another criminal offense; and

- to comply with the terms of a cooperation agreement under which he agreed to make a good faith effort to assist the government in investigating and prosecuting other persons involved in criminal activity.

*Id.* at pp. 4-5.

The plea agreement also contained a waiver provision whereby Jemison relinquished his rights to appeal and collaterally attack his sentence except on grounds of ineffective

assistance of counsel and prosecutorial misconduct. *Id*. at 7-8.[1]

At the change of plea hearing, Jemison stated under oath that he had read and discussed the plea agreement with his counsel before signing it, and that he understood the terms of the plea agreement. *See Change of Plea Hearing* (Gov. Exh. C) at pp. 4-5 & 8-10. During the plea colloquy, Jemison was informed of the statutory maximum sentences for the two charges to which he was pleading guilty. *Id*. at pp. 6-7. Jemison affirmed to the court that he understood the maximum punishment for the charges. *Id*. at p. 7. The terms of the waiver were discussed at the plea hearing, with Jemison acknowledging that he understood he was waiving his rights to appeal and collaterally attack his sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. *Id*. at pp. 8-10.

**B.    *Sentencing***

The United States Probation Office prepared a presentence investigation report ("PSI") in Jemison's case. The probation office found that because Jemison's conduct while on pretrial supervision had been "inconsistent with [the] acceptance of responsibility," he should not receive any offense-level reductions for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.[2] *See PSI* at p. 5, ¶ 10 & p. 6 ¶ 19; U.S.S.G. § 3E1.1, comment. (n. 1(b) & 3). Converting the various drug quantities involved in Jemison's offense into marijuana

---

[1] The agreement also provided that Jemison could appeal an upward departure or could take an appeal if the government appealed.

[2] After pleading guilty but before sentencing, Jemison violated the terms and conditions of his release, and he was committed to the custody of the United States Marshal, where he remained until sentencing.

3

equivalencies, as provided in the *Drug Equivalency Tables* found at U.S.S.G. § 2D1.1, the probation office computed Jemison's base offense level for Count 1 to be 26. *See PSI* at p. 5, ¶ 13. The probation office found that Jemison had no criminal history points, which established his Criminal History Category as I. *Id.* at p. 7, ¶ 26.

At the sentencing hearing, which was held on October 31, 2007, the district court accepted the findings and recommendations in the PSI without objection from Jemison. *See Sentencing Hearing* (Gov. Exh. D) at pp. 2-3. As there were no recommended sentence enhancements or reductions, the court determined Jemison's total offense level for Count 1 to be 26, the same as the base offense level for that count. *Id.* at 3. Combining the offense level of 26 with Jemison's Criminal History Category of I produced an advisory guideline range of 63 to 78 months for Count 1. *Id.* The court sentenced Jemison to 63 months' imprisonment for Count 1, at the low end of the applicable guideline range. *Id.* As to Count 4, the court sentenced Jemison to 60 months' imprisonment, the minimum required by 18 U.S.C. § 924(c)(1), which also required the sentence to run consecutively to the sentence for Count 1. *Id.* Thus the total sentence imposed was 123 months.

At the conclusion of the sentencing hearing, the district court reminded Jemison that, under the plea agreement, he had waived his right to appeal. Jemison did not appeal.

C.    ***Section 2255 Contentions***

On August 25, 2008, Jemison, acting *pro se*, filed this § 2255 motion, asserting that his trial counsel was ineffective for failing to consult with him regarding an appeal and that, as a consequence, he was denied his right to appeal. (Doc. No. 1 at pp. 4 & 11-14.) Jemison

subsequently amended his § 2255 motion to allege also that because his counsel "failed to litigate a meritorious fourth amendment claim competently," he "waived his right to appeal in an unknowing and unintelligent manner." (Doc. No. 3 at p. 1.) The government answers that Jemison's claims of ineffective assistance of counsel are meritless and that he is therefore not entitled to any relief. (Doc. No. 23 at pp. 3-7.)

## II.     DISCUSSION

### A.     *Standard for Reviewing Claims of Ineffective Assistance of Counsel*

Claims of ineffective assistance of counsel are governed by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *see Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

In any ineffective assistance analysis, scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314; *see Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992). The

court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

The prejudice prong of an ineffective assistance analysis does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required by both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697 (court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one"); *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong.").

6

### B. *Failure to Litigate "Meritorious Fourth Amendment Claim"*

Jemison contends that his counsel rendered ineffective assistance by failing to competently litigate a meritorious Fourth Amendment claim. (Doc. No. 3 at p. 1.) Jemison presents absolutely no argument or facts in support of this claim. Thus, the court is left only to guess at the "meritorious Fourth Amendment claim" he alludes to here.

The circumstances of Jemison's arrest and the seizure of the evidence against him are set forth in the Presentence Investigation Report ("PSI"), in pertinent part, as follows:

> 4. On April 11, 2006, Police Officer Scott Baxley with the Prattville Police Department observed an individual in a Toyota Avalon at the Holiday Inn located in Prattville, Alabama, acting suspicious. Officer Baxley approached the defendant's vehicle to investigate further at which time he observed the defendant place a small bag behind the front seat. While talking to the defendant, Officer Baxley asked the defendant what was inside the bag. Jemison then handed Officer Baxley a metal container and told the officer to open the container. When Officer Baxley opened the metal container, he observed a small amount of marijuana inside. Officer Baxley, with the assistance of Sergeant Fowler, then instructed the defendant to exit the vehicle.
>
> 5. While exiting the vehicle, Jemison reached into his front pocket and retrieved a small handgun. Jemison was instructed to drop the weapon and a short struggle ensued before the handgun, a Davis Industries .32 caliber semi-automatic pistol, serial number P096623, loaded with four rounds of ammunition, fell to the floor of the vehicle. After Jemison was taken into custody, Jemison kept saying to the officers that they should have beat him because he deserved it. A more thorough search was then conducted and officers recovered a large amount of cash from Jemison's pocket ($1,632), a small bag of marijuana in the center console of the vehicle, and a brown bag that Jemison placed behind the seat when Officer Baxley approached the vehicle. A further examination of the brown bag revealed

7

>   several bags of cocaine, crack cocaine, and marijuana packaged to sell. In addition, several other items were seized which included digital scales, razor blades, syringes, plastic bags, and a blue notebook containing $65 in currency.
>
>   ....
>
> 7. The defendant was later interviewed and admitted to being a drug user by injecting cocaine and smoking marijuana. He further advised that he sold cocaine for a living because he could not make money doing anything else. The evidence collected from Jemison and his vehicle was later forwarded to the lab for forensic testing. On May 23, 2006, the evidence was analyzed by DEA and the total net weight of all packages are as follows: 15.41 grams of marijuana, 12.4 grams of cocaine hydrochloride, and 19.1 grams of cocaine base(crack).

PSI at pp. 3-4, ¶¶ 4-7.[3]

Pursuant to this court's orders, Jemison's trial counsel, Joe M. Reed, filed an affidavit in which he discusses Jemison's allegation of ineffective assistance. (Doc. No. 11.) Reed's summary of the facts surrounding Jemison's arrest is largely consistent with the facts as set forth in the PSI.[4] In his affidavit, Reed avers that, after reviewing the discovery materials provided to him by the United States Attorney and comparing them to Jemison's own account of the facts of the case, he concluded that Jemison had no legitimate Fourth

---

[3] At the sentencing hearing, the district court recited these facts from the PSI and specifically adopted them as "true and factual." *Sentencing Hearing* (Gov. Exh. D) at pp. 6-7.

[4] Reed also notes in his affidavit that the encounter between Jemison and the police took place "in the late evening" and that the police were patrolling the Holiday Inn parking lot "[d]ue to some previously alleged criminal activity in the area." (Doc. No. 11 at p. 2.) In addition, he states that the police observed the gun "in the small of Mr. Jemison's back," between his back and the car seat, as he "squirm[ed] around in his seat," before they instructed Jemison to exit his vehicle. (*Id*.) The facts as recounted in the PSI indicate that the police first saw the gun as Jemison was exiting the vehicle after being instructed to do so. *See* PSI at p. ¶¶ 4-5.

8

Amendment issue and that Jemison's chances of prevailing on a motion to suppress the government's evidence were "slim and none." (*Id*. at pp. 2-3.)

For his part, Jemison disputes neither the account of his arrest set forth in the PSI nor the representations made by Reed in his affidavit. The account set forth in the PSI and Reed's averments do not reflect any Fourth Amendment violation in the police encounter with Jemison, in his arrest, or in the seizure of incriminating evidence. The initial police encounter with Jemison – when Officer Baxley approached Jemison in his parked car and put questions to him – did not constitute a seizure,[5] and everything that followed this initial encounter took place after Jemison, unsolicited, handed Officer Baxley a container with marijuana inside and told the officer to open the container. Upon seeing the marijuana, the officer had probable cause to arrest Jemsion, *see Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997), and the police were authorized to search Jemison's person and the vehicle's passenger compartment incident to the arrest, *see United States v. Chaves*, 169 F.3d 687, 691 (11th Cir. 1999); *United States v. Alexander*, 835 F.2d 1406, 1409 (11th Cir. 1988). Thus, Jemison has not established that there was an arguably meritorious Fourth Amendment claim

---

[5] *See United States v. Drayton*, 536 U.S. 194, 200 (2002) ("Law enforcement officers do not violate the Fourth Amendment ... by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."); *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006) ("This Court has decided on several occasions that a police officer does not seize an individual merely by approaching a person in a parked car."); *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006) (officers are free, without any level of suspicion, to approach citizens on the street or in a public place and ask them questions, request proof of identification, and a consent to search).

that his counsel might have asserted.[6] Consequently, he fails to demonstrate that counsel's performance in this regard fell below an objective standard of reasonableness or that he was prejudiced by counsel's performance. *See Strickland*, *supra*.

Moreover, Jemison makes no allegation that, but for his counsel's allegedly deficient performance in this regard, he would not have pled guilty and would instead have proceeded to trial.[7] The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). It therefore falls upon a petitioner alleging ineffective assistance in this context to establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. In other words, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial." *Id*. Jemison's allegations fail to satisfy this standard. Thus, he is not entitled to any relief based on this claim of ineffective assistance

---

[6]In *Arizona v. Gant*, 556 U.S. ----, ----, 129 S.Ct. 1710, 1719 (2009), the Supreme Court overruled *New York v. Belton*, 453 U.S. 454 (1981), and held that officers may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or when "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Gant* is not applicable here for two reasons. First, at the time the officers searched Jemison's car, the settled law permitted the search. Therefore, suppression of any evidence found during the search is not warranted. *United States v. Davis*, 598 F.3d 1259 (11th Cir. 2010). Secondly, the undisputed facts show that Jemison obtained the box containing the marijuana from the vehicle; therefore, it was reasonable to believe evidence relevant to the crime might be found in the vehicle.

[7]Jemison asserts, without elaboration, that his counsel's allegedly deficient performance with regard to the Fourth Amendment issue led to his "waiv[ing] his right to appeal in an unknowing and unintelligent manner." (Doc. No. 3 at p. 1.) However, he fails to explain how his counsel's performance in this regard vitiated the knowing and voluntary nature of the appeal waiver.

of counsel.

## C.     Failure to Consult about Appeal

Jemison contends that he was denied his right to appeal because his counsel, Reed, failed to consult with him in regarding the possibility of appealing and did not advise him about the advantages and disadvantages of taking an appeal. (Doc. No. 1 at pp. 4 & 11-14.)

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that *Strickland v. Washington* applies to determine whether counsel was ineffective for failing to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 477. With respect to the first prong of *Strickland* – whether counsel's representation fell below an objective standard of reasonableness – the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477). Moreover, even if the client does not directly request an appeal, counsel generally has a duty to consult with him about an appeal. *See Flores-Ortega*, 528 U.S. at 480-81.

"[W]here a defendant has not specifically instructed his attorney to file an appeal, [the court] must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007) (quoting *Flores-Ortega*, 528 U.S. at 478); *see also Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008). The Supreme Court in *Flores-Ortega* held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think

either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. The Supreme Court stated that, although not determinative, a highly relevant factor in this inquiry will be

> whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

*Flores-Ortega*, 528 U.S. at 480. The Supreme Court defined the term "consult" specifically to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478.

Here, Jemison does not allege anywhere in his pleadings that he ever instructed Reed to file an appeal. Instead, without elaboration, he asserts only that "movant acted in a manner that he wanted to appeal." (Doc. No. 1 at p. 12.) Reed, for his part, does not refer to any post-sentencing communication with Jemison about filing an appeal or his right to appeal. The question for this court, then, is whether counsel had a duty to consult with his client about an appeal under the circumstances. In answering this question, the court is guided by the above-mentioned, two-prong test set out in *Flores-Ortega*. *See Devine*, 520 F.3d at 1288.

With respect to the first prong of *Flores-Ortega*, the court finds that a rational defendant in Jemison's position would not have wanted to appeal. Jemison pled guilty, and

there is no suggestion that his guilty plea was invalid. The plea agreement contained a waiver provision whereby Jemison waived his rights to appeal or collaterally attack his sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. Such waivers have been enforced consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases). An appeal waiver is valid if a defendant enters into it knowingly and voluntarily.[8] *See Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350-55 (11th Cir. 1993). There is no indication in the pleadings or other records before this court that Jemison's waiver was anything but knowing and voluntary and as stated in the plea agreement. Jemison signed the written plea agreement indicating that he understood the entire agreement, including the waiver of his rights to appeal and collaterally attack his sentence. *Plea Agreement* (Gov. Exh. B) at p. 13. At the guilty plea colloquy, Jemison affirmed under oath that he had read and discussed the plea agreement with his counsel before signing it, and that he understood the terms of the plea agreement. *See Change of Plea Hearing* (Gov. Exh. C) at pp. 4-5. In addition, the court carefully explained the terms of the waiver to Jemison, who stated that he understood them. *Id*. at pp. 8-10. Thus, the record establishes that Jemison's assent to the waiver provision in his plea agreement was knowing and voluntary.

---

[8] To enforce such a waiver, the government must demonstrate either that (1) the district court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver. *Bushert*, 997 F.2d at 1351.

The record further show that the district court, at the conclusion of the sentencing hearing, reminded Jemison that he had waived his right to appeal according to the plea agreement. *Sentencing Hearing* (Gov. Exh. D) at p. 12. The benefits Jemison received under the plea agreement and by pleading guilty were not inconsiderable. Two of the four counts of the indictment were dismissed, and he was sentenced at the low end of the guideline range for Count 1 and to the statutory mandatory minimum for Count 4. In his affidavit filed with this court, Reed indicates that in light of the evidence against Jemison, including the fact that Jemison gave a statement incriminating himself in the offenses with which he was charged, the prosecution would have very little difficulty in making its case against Jemison. (Doc. No. 11 at pp. 3-4.) Finally, in his § 2255 motion, Jemison fails to identify a nonfrivolous ground upon which he might have mounted an appeal. His ineffective assistance of counsel claim is premised on a Fourth Amendment claim that lacks merit, and the guilty plea itself would have operated to preclude him from raising a substantive Fourth Amendment claim in an appeal. For these reasons, the court finds that, under the circumstances of Jemison's case, a rational defendant would not have wanted to appeal. *Flores-Ortega*, 528 U.S. at 480.

Turning to the second *Flores-Ortega* prong, the court finds Jemison's conclusory assertion that he "acted in a manner that he wanted to appeal" – where such an assertion is wholly unsupported by a single specific factual allegation – insufficient to satisfy the second prong's requirement that "[the] particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. In the absence of statements of fact indicating *how* he "acted in a manner that he wanted to appeal," Jemison's

14

assertion amounts to nothing more than an unsupported conclusion. The need for some amount of specificity is especially strong in this instance, where Jemison's bald assertion that he "acted in a manner that he wanted to appeal" comes in a case where he knowingly waived his appeal rights under the express terms of his plea agreement and the record of the guilty plea proceedings does not readily suggest any grounds for an appeal.

A 28 U.S.C. § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, if accepted as true, would not entitle petitioner to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1998). *See Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (evidentiary hearing not required where petitioner's claim is "based upon unsupported generalizations")  Upon that standard, the court finds that Jemison's conclusory allegation, bereft of record support or factual specificity, does not entitle him to an evidentiary hearing in this matter. Because, Jemison has failed to establish that his counsel's failure to consult with him about an appeal constituted ineffective assistance of counsel or denied him his right to appeal, he is not entitled to any relief based on this claim.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Jemison be denied, as the claims therein entitle him to no relief.

It is further

15

ORDERED that the parties shall file any objections to this Recommendation **on or before August 9, 2010**.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 26th day of July, 2010.

                                          /s/Charles S. Coody
                                          CHARLES S. COODY
                                          UNITED STATES MAGISTRATE JUDGE